2009 APR 21 AM 10: 29

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

FREDRICK ALLEN ELLIS,

    Plaintiff,

v.                         CIVIL ACTION NO.: CV508-013

RICHARD KING, Sheriff; Deputy
Cpl. VANIECE HARRIS, and JOE
EADDY, Jailer,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed a Complaint pursuant to 42 U.S.C. § 1983 contesting the conditions of his confinement while he was incarcerated at the Pierce County Jail in Blackshear, Georgia. Defendants Sheriff Richard King, Corporal Vaniece Harris, and Jailer Joe Eaddy filed a Motion for Summary Judgment. (Doc. No. 116). Plaintiff filed a Response (Doc. No. 119) and an Addition (Doc. No. 120). Defendants filed a Reply Brief in Support of Summary Judgment. (Doc. No. 121). For the following reasons, Defendants' Motion for Summary Judgment should be **GRANTED**, in part, and **DENIED**, in part.

## STATEMENT OF THE CASE

Plaintiff contends that he was subjected to cruel and unusual punishment while he was housed at the Pierce County Jail. Specifically, Plaintiff contends that he was

placed in a cell with no hot water, workable shower, bed, and he often had to go without toilet paper. Plaintiff further contends that after Defendant King placed him in a protective custody cell, he was assaulted by two inmates placed in his cell by Defendant Eaddy. Plaintiff asserts that Defendant Eaddy denied him his prescription medication. Plaintiff further asserts that he attempted suicide twice after his requests for mental healthcare were denied. Plaintiff contends that Defendants King and Harris did not properly train their staff at the Jail or take proper action when it was necessary. Finally, Plaintiff asserts that Defendant Harris did nothing to help him after he told her that he was suicidal and that he had attempted suicide in the past.

Defendants King, Harris, and Eaddy contend that they are entitled to summary judgment because the general conditions of Plaintiff's confinement did not rise to the level of a constitutional violation. Defendants further contend that the statute of limitations has lapsed on any claim arising out of the alleged assault on Plaintiff. Defendants assert that they were not deliberately indifferent to Plaintiff's alleged serious medical needs. Defendant King contends that he can not be liable under a respondeat superior theory. Defendants King, Harris, and Eaddy assert that they are entitled to qualified immunity, even if the Court finds that Plaintiff's constitutional rights were violated.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrashi Sephardi, Inc. v. Town of

AO 72A
(Rev. 8/82)

2

Surfside, 366 F. 3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F. 3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F. 3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F. 3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

### DISCUSSION AND CITATION TO AUTHORITY

I. **The statute of limitations bars any claims arising out of the alleged February 2005 assault.**

Defendants King, Harris, and Eaddy assert that there is a two-year statute of limitations on § 1983 claims in the state of Georgia. Defendants further assert that any

claims arising out of the alleged assault in February 2005 are barred by the statute of limitations because Plaintiff did not file his complaint until February 1, 2008. Defendants contend that there is no reason to toll the statute of limitations in this action. Defendants further contend that Plaintiff can not meet the high standard of proving liability in a case of this type. (Doc. No. 116-3, pp. 10-11).

Plaintiff contends that the statute of limitations should be tolled until he was released from the Pierce County Jail in May of 2006. Plaintiff asserts that he was not in a position to file a lawsuit until his release because he was assaulted, abused, and in fear while at the Pierce County Jail. Plaintiff further asserts that he was not mentally stable enough to file a claim until he was released. (Doc. No. 119, pp. 4-5).

A state's residual or general personal injury statute of limitations applies to cases brought pursuant to 42 U.S.C. § 1983. Owens v. Okure, 488 U.S. 235, 236 (1989). The proper limitations period for all § 1983 claims in Georgia is two years. Williams v. Atlanta, 794 F. 2d 624, 626 (11th Cir. 1986) (citing O.C.G.A. § 9-3-33); see also Sanders v. Barrett, 2005 WL 2640979, at *1 n. 2 (11th Cir. 2005). While courts are to look to state laws to determine the applicable statute of limitations in § 1983 cases, federal law determines when a § 1983 cause of action accrues. Wallace v. Kato, 549 U.S. 384, 388 (2007). The accrual date for an action filed pursuant to section 1983 is "governed by federal rules conforming in general to common-law tort principles." Id. "Under those principles, it is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" Id. (internal punctuation and citation omitted).

The record reveals that the alleged assault giving rise to Plaintiff's claims occurred in February of 2005. (Doc. No. 117, p. 13). Plaintiff did not file the present cause of action until February 1, 2008. (Doc. No. 1). Plaintiff's contention that the statute of limitations should be tolled because he was not in a position to file a lawsuit until his release from the Pierce County Jail is without merit. Plaintiff's assertion that the statute of limitations should be tolled due to his mental incompetence is similarly without merit. Plaintiff has produced no evidence that establishes that he was mentally incompetent during the relevant time period. Plaintiff also averred that no court has declared him incompetent. (Doc. No. 117, p. 20). Plaintiff was aware of his alleged injury and its alleged cause prior to February 1, 2006, and he has not advanced a legitimate reason for the statute of limitations to be tolled. Accordingly, any claim arising out of the alleged February 2005 assault should be **DISMISSED**.

II. **Defendants are not entitled to summary judgment on Plaintiff's claims that they were deliberately indifferent to his health and safety.**

Defendants King, Harris, and Eaddy contend that Plaintiff's allegations of infrequent showers, sleeping on a mat, and the lack of hot water in his cell do not rise to the level of a constitutional violation. (Doc. No. 116-3, p. 7). Defendants further contend that the conditions complained of by Plaintiff can not be classified as extreme, or as an unreasonable risk of serious damage to plaintiff's future health or safety. Defendants assert that there is no evidence that any of them knew of, and disregarded, any risk associated with the conditions. (Id. at 8-10).

Plaintiff asserts that the general conditions of his confinement were constitutionally inadequate because he often had no toilet paper, would go up to fourteen days at a time without a shower, had no hot water, had no bed, had no normal

entertainment, was assaulted, was abused by Defendant Eaddy, and a trustee serving his meals was one of the inmates who allegedly assaulted him. (Doc. No. 119, p. 3). Plaintiff contends that Defendant Eaddy knew of the possibility that he would be assaulted before putting the inmates in his cell. (Id. at 8-9). Plaintiff further contends that he informed Defendant King of his belief that Defendant Eaddy put the inmates in his cell intentionally. Plaintiff asserts that Defendant King knew of the abuse suffered by Plaintiff and other inmates. (Id. at 10).

"Claims involving the mistreatment of pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citation and punctuation omitted). However, "decisional law involving prison inmates applies equally to cases involving pretrial detainees." Id. (internal punctuation omitted). Plaintiff was a pretrial detainee while incarcerated at the Pierce County Jail and his claims are thus governed by the Fourteenth Amendment's Due Process Clause, as opposed to the Eighth Amendment's Cruel and Unusual Punishment Clause.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard embodies the principle requiring prison officials to provide inmates with humane conditions of confinement, including adequate food. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "To show a violation of [his] . . . rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk;

and (3) causation." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. at 1319-20 (quoting Farmer, 511 U.S. at 837). Whether a substantial risk of serious harm exists involves a legal rule that takes form through its application to facts. For summary judgment purposes, all disputed facts are resolved in accord with Plaintiff's view of the facts. Id. at 1320.

Like any deliberate indifference claim, a prisoner must satisfy both an objective and a subjective inquiry. Chandler, 379 F.3d at 1289-90. Under the objective component, a prisoner must prove the condition he complains of is sufficiently serious. Hudson v. McMillian, 503 U.S. 1, 8 (1992). "Specifically, a prisoner must prove a serious medical need or the denial of the minimal civilized measure of life's necessities." Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Id. (quoting Farmer, 511 U.S. at 837). To prove deliberate indifference, the prisoner must show that the defendant prison official "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition or serious medical need in issue. Id. (quoting Chandler, 379 F.3d at 1289-90).

There are genuine issues of material fact as to whether Defendants King, Harris, and Eaddy were deliberately indifferent to Plaintiff's health and safety. Plaintiff's allegations that he was denied toilet paper and the use of a shower for up to fourteen days at a time arguably constitute a denial of the minimal civilized measures of life's

necessities sufficiently extreme to satisfy the objective prong of the deliberate indifference analysis. See Miller, 384 F.3d at 1260-61. Plaintiff has also satisfied the subjective prong of the deliberate indifferent analysis. At Plaintiff's deposition, he testified that he wrote a letter making Defendant King aware of the conditions of his cell, but Defendant King did not follow-up or investigate. (Doc. No. 117, pp. 24-25). Plaintiff further testified that nothing was done to correct the problems after he wrote Defendant King letters regarding his lack of shower access and toilet paper. (Id. at 29-30). Plaintiff's testimony also makes it clear that Defendant Eaddy was aware of the conditions of his cell (Id. at 21) and his infrequent showers. (Id. at 17). Plaintiff further testified that he wrote Defendant Harris letters making her aware of his concerns regarding the lack of showers. (Id. at 30). Plaintiff's testimony creates a genuine issue as to whether Defendants King, Harris, and Eaddy were deliberately indifferent to the allegedly unconstitutional conditions of his confinement. Accordingly, Plaintiff's claims against Defendants King, Harris, and Eaddy arising out of the conditions of his confinement should be permitted to proceed.

### III. Respondeat superior.

Defendant King contends that there is no basis for liability against him because he was a supervisor and cannot be held personally liable under § 1983 for the constitutional deprivations caused by his subordinates, absent his participation or direction in the deprivation. (Doc. No. 116-3, p. 14) (citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F. 2d 675, 680 (9th Cir. 1984). Defendant King asserts that he never personally participated in any alleged deprivation. Defendant King further asserts that there is no causal connection between him and any alleged deprivation.

(Doc. No. 116-3, p. 15). Defendant King contends that Plaintiff is generally complaining about a lack of subsequent investigation by him, as opposed to his personal participation in the alleged constitutional deprivations. (Id. at 16). Defendant King notes that Plaintiff has produced no evidence of any alleged widespread abuse. (Id. at 16-17).

In section 1983 actions, liability must be based on something more than a theory of respondeat superior. Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998). A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Id. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. Having actual notice of the alleged unconstitutional practices combined with a refusal to investigate or respond comprises such a causal connection. Id. To establish a supervisor's liability for failure to train, a plaintiff must prove: (1) the supervisor's failure to train was deliberately indifferent; (2) a reasonable person in the supervisor's position would know that the failure to train reflected deliberate indifference; and (3) the supervisor's conduct was causally related to the constitutional infringement committed by his subordinate. Greason v. Kemp, 891 F. 2d 829, 836-837 (11th Cir. 1990).

There are genuine issues of material fact as to whether Defendant King was causally connected to the alleged unconstitutional conditions of Plaintiff's confinement.

Defendant King's assertion that Plaintiff is generally complaining about a lack of subsequent investigation, as opposed to personal participation, is unavailing. Plaintiff testified at his deposition that he notified Defendant King of the conditions of his confinement and nothing was done to correct the situation. While Plaintiff testified that he did not know Defendant King's policy regarding how often he should shower (Doc. No. 117-2, p. 29), he also testified that he wrote letters to Defendant King regarding his lack of shower access. (Id. at 29-30). Plaintiff further testified that he wrote Defendant King a letter regarding his lack of toilet paper. (Id.). There is a genuine issue as to whether there is a causal connection between Defendant King and the alleged constitutional deprivations because Plaintiff has testified that King received notice of the alleged unconstitutional conditions of Plaintiff's confinement and failed to respond. See Braddy, at 802. Plaintiff's claims against Defendant King are based on more than a theory of respondeat superior. However, Plaintiff has failed to come forth with any evidence that goes to show that Defendant King's or Defendant Harris' alleged failure to train was causally related to any alleged constitutional deprivations. See Greason, 891 F. 2d at 836-837. Plaintiff's claims against Defendants King and Harris for any alleged failure to train should be **DISMISSED**.

IV. **Defendants were not deliberately indifferent to Plaintiff's serious medical needs.**

Defendants King, Harris, and Eaddy contend that they were not deliberately indifferent to Plaintiff's serious medical needs. (Doc. No. 116-3, p. 12). Defendants note that Plaintiff testified at his deposition that, while incarcerated at Pierce County Jail, he was taken to Satilla Regional Medical Center at least eight times, to a urologist at least twice, to a general practitioner at least three times, and to mental health "quite a few

times." (Id. at p. 13) (citing Doc. No. 117, pp. 49-50). Defendants assert that none of the medical professionals who treated Plaintiff indicated that he receive more medical treatment. Defendants contend that this case is more appropriately viewed as a layperson disagreeing with the treatment he received, as opposed to Plaintiff complaining that he did not receive treatment at all. Defendants note that Plaintiff has produced no medical evidence demonstrating harm caused by their alleged deliberate indifference to his medical conditions. Defendants further note that, with regard to Plaintiff's alleged attempt to overdose on prescription pills, a drug test revealed no drugs in his urine. Defendants contend that even if Plaintiff received less than adequate medical treatment, there is no medical evidence of any harm resulting therefrom. (Doc. No. 116-3, pp. 13-14).

Plaintiff asserts that his request for mental healthcare was initially denied after he notified Defendant Harris that he was suicidal. Plaintiff further asserts that he only received mental healthcare after he attempted to commit suicide twice. (Doc. No. 1, pp. 5-7). Plaintiff contends that he never claimed that he was not given his medication, only that Defendant Eaddy refused to give him his medication and that his medication would go missing for a week at a time. Plaintiff further contends that the medical records reveal that the urinalysis performed after his suicide attempt did not test for the type of prescription drugs he ingested. (Doc. No. 119, p. 7). Plaintiff asserts that he suffered scars on his wrist from the suicide attempt, surgery scars, and mental health effects as a result of Defendants' deliberate indifference. (Id. at 9).

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to

guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994).

Like any deliberate indifference claim, the Estelle analysis incorporates both an objective and a subjective component. Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994). The objective component is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992) (quoting Estelle, 429 U.S. at 103). Under that standard, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'." Hill, 40 F.3d at 1186 (quoting Hudson, 503 U.S. at 9). In the Eleventh Circuit, a medical need is serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d 1187 (internal citations omitted). As to the subjective component, the Eleventh Circuit "has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." Hill, 40 F.3d at 1186 (quoting Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989)). To demonstrate deliberate indifference in the medical context, Defendants must have intentionally delayed access to medical care for such a period as to constitute the unnecessary and wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). A difference in medical opinion between a prison's medical staff and the inmate as to the latter's diagnosis or course of treatment is not sufficient to support a claim of cruel and unusual treatment. Hilton v. McHugh, 178

Fed. Appx. 866, 871 (11th Cir. 2006) (citing Harris v. Thigpen, 941 F. 2d 1495, 1505 (11th Cir. 1991).

Plaintiff was taken to Satilla Regional Medical Center at least eight times during his stay at the Pierce County Jail. (Doc. No. 117, pp. 81-94). Plaintiff testified at his deposition that he was taken to a urologist at least twice, a general practitioner at least three times, and to mental health "quite a few times" while at the Pierce County Jail. (Id. at 49-50). On February 10, 2005, Plaintiff underwent a mental health evaluation at Satilla Regional Medical Center. Plaintiff was deemed to be uncooperative for the exam. However, the doctors determined that Plaintiff was not a suicide risk. (Id. at 81-83). Plaintiff was taken to Satilla Regional Medical Center on November 28, 2006, after his alleged attempt to overdose on prescription pills. The medical records indicate that Plaintiff was found to speak legibly and coherently and told Dr. Grooms that he was not suicidal. Plaintiff was assessed as being non-suicidal and it was noted that there was no proof of drug ingestion. A urinalysis came back negative for any drugs. (Id. at 91-92). On December 8, 2006, Plaintiff was treated at Satilla Regional Medical Center for self-inflicted lacerations to his wrists. (Id. at 93-94).

The record reveals that Plaintiff received adequate medical attention while at the Pierce County Jail. While Plaintiff has arguably established that he had a serious medical need, he has not shown that Defendants intentionally refused to provide him medical care. See Hill, 40 F. 3d at 1186-87. Plaintiff's allegation that he only received mental healthcare after his suicide attempts is without merit. Plaintiff was given a mental health evaluation at Satilla Regional Medical Center shortly after his arrival at the Pierce County Jail, and the medical professionals deemed him to not be a suicide

risk. Plaintiff frequently received medical care throughout his incarceration at the Pierce County Jail, including multiple trips to mental health. Plaintiff's allegations do not rise to the level of a constitutional violation because they largely consist of a difference of opinion with those providing his healthcare regarding the wisdom of the course of his treatment. See Hilton, 178 Fed. Appx. at 871. Plaintiff's claims for deliberate indifference to his serious medical needs should be **DISMISSED**.

V. **Qualified immunity.**

Defendants King, Harris, and Eaddy contend that they are entitled to qualified immunity even if Plaintiff's constitutional rights were violated. Defendants assert that there is no case law indicating that the frequency of Plaintiff's showers, his bedding situation, or the lack of hot water in his cell were unconstitutional. Defendants further assert that there are no comparable cases indicating that the level of Plaintiff's mental and medical healthcare were necessarily unconstitutional. Defendants contend that because there is no clearly established law indicating that their actions were unlawful, they are entitled to qualified immunity. (Doc. No. 116-3, pp. 17-18).

The law governing whether a government official is entitled to qualified immunity is well-established in the Eleventh Circuit. Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities, so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "A government

official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1185 n. 17 (11th Cir.1994). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: First, the court must determine whether plaintiff's allegations, if true, establish a constitutional violation. Hope, 536 U.S. at 736. If, under the plaintiff's allegations, the defendants would have violated a constitutional right, the "the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir.2004).

At the time of Plaintiff's confinement at the Pierce County Jail, it was well established law that prison officials could not be deliberately indifferent to the health and safety of inmates. Defendants King, Harris, and Eaddy are not entitled to qualified immunity on Plaintiff's claim arising out of the conditions of his cell at the Pierce County Jail.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment (Doc. No. 116-3) be **GRANTED**, in part, and **DENIED**, in part. Plaintiff's claims against Defendants King, Harris, and Eaddy arising out of the alleged assault in February of 2005 and the alleged deliberate indifference to his serious medical needs should be **DISMISSED**. To the extent that Plaintiff asserts any claims

against Defendants King and Harris for a failure to train, these claims should also be **DISMISSED**. Plaintiff's claims against Defendants King, Harris, and Eaddy arising out of the conditions of his cell should remain pending.

**SO REPORTED** and **RECOMMENDED**, this 21st day of April, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)